Appeal No. 14-20241

## UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

MAURICE GOUDEAU,

*PLAINTIFF-APPELLANT*

v.

NATIONAL OILWELL VARCO, L.P.,

*DEFENDANT-APPELLEE*

On Appeal from the United States District Court for the Southern District of Texas-Houston Division Case No. 4:12-CV-3332, entered March 28, 2014.

## BRIEF OF MAURICE GOUDEAU, PLAINTIFF-APPELLANT

Terrence R. Robinson
Michelle Mishoe Miller
KENNARD BLANKENSHIP & ROBINSON, P.C.
5433 Westheimer Road, Suite 825
Houston, Texas 77056
Phone: (713) 742-0900
Email: Terrence.Robinson@kennardlaw.com
*Counsel for Maurice Goudeau-Appellant*

Appeal No. 14-20241

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

-------------------------------------------------------X

MAURICE GOUDEAU,
             Plaintiff-Appellant
       v.
NATIONAL OILWELL VARCO, L.P.
             Defendant-Appellee

-------------------------------------------------------X

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

     The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

1.  Maurice Goudeau, Plaintiff-Appellant;

2.  Terrence B. Robinson and Michelle Mishoe Miller, Kennard, Blankenship & Robinson, P.C., Attorneys for Maurice Goudeau, Plaintiff-Appellant;

3.  Christopher E. Moore, Ogletree, Deakins, Nash, Smoak & Stewart, P.C, One Shell Square, 701 Poydras St., Suite 3500, New Orleans, LA 70139, Attorney for National Oilwell Varco, L.P., Defendant-Appellee.



_____
Terrence B. Robinson
ATTORNEY OF RECORD FOR MAURICE
GOUDEAU, PLAINTIFF-APPELLEE

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to 5th Cir. R. 28.2.3, Maurice Goudeau, Plaintiff-Appellant, requests that the Court hear oral argument in this case. This case meets the standards in Rule 34(a)(2) for oral argument, in that this appeal is not frivolous, and as described in the accompanying memorandum, the decisional process would be significantly aided by oral argument.

### *TABLE OF CONTENTS*

*CERTIFICATE OF INTERESTED PARTIES* ……………………………...……………2

*STATEMENT REGARDING ORAL ARGUMENT*……………………………………3

*TABLE OF CONTENTS* ……………………………………………………………4

*TABLE OF AUTHORITIES* ……………………………………………………………5

*STATEMENT OF JURISDICTION* ……………………………………………………6

*STATEMENT OF THE ISSUES* …………………………………………………………6

*STATEMENT OF THE CASE* ……………………………………………………6

    *A.     Proceedings Below*……………………………………………………6

    *B.     Statement of the Facts*…………………………………………… 7

        *1.  The Parties*……………………………………………………7

        *2.  Goudeau's Employment History with NOV*…………………………8

*SUMMARY OF THE ARGUMENT* …………………………………………………17

*ARGUMENT* …………………………………………………………………………17

    *A.     Standard of Review*……………………………………………….. 17

    *B.     Issue One Restated:*

    *Whether the District Court erred in granting NOV's Motion for Summary Judgment because Goudeau clearly demonstrated that NOV's reason for his termination was pretextual.* ……………………………………………...18

    *1. Standard of Review*……………………………………………….18

    *2. The District Court Correctly Finds Discrimination in Violation of the ADEA and TCHRA*……………………………………………..20

    *3. Goudeau Established Genuine Issues of Material Fact Regarding Pretext*………………………………………………….20

        *A.   NOV Did Not Act in Good Faith in Terminating Goudeau*……….20

        *B.   Goudeau Presented Sufficient Evidence to Show Pretext*……….24

    *C.     Issue Two Restated:*

    *Whether the District Court erred in granting NOV's Motion for Summary Judgment because Goudeau clearly demonstrated a causal connection existed between Goudeau's protected activity and his termination*…………..26

    *1. Standard of Review* ………………………………………………26

    *2. Argument and Analysis* …………………………………………27

        *A.   Goudeau's Termination and the Protected Activity Were Not Wholly Unrelated*……………………………...........27

        *B.   Goudeau Presented Sufficient Evidence to Support his Retaliation Claim*…………………………………………………………29

*CONCLUSION* ………………………………………………………………..………31

*CERTIFICATE OF COMPLIANCE*……………………………………………………32

*CERTIFICATE OF SERVICE*…………………………………………………………33

# TABLE OF AUTHORITIES

***Cases***

*Anderson v. Liberty Lobby*, 477 U.S. 242, 249-52 (1986) ...................................... 18

*Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir.2000) ................ 27

*Dediol v. Best Chevrolet*, 655 F.3d 435, 439 (5th Cir. 2011) ................................. 18

*EEOC v. WC&M Enters.*, 496 F.3d 393, 397-98 (5th Cir. 2007) ........................... 18

*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir.1995) ................... 20

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007) ........................... 20

*McCoy v. City of Shreveport,* 492 F.3d 551, 557 (5th Cir.2007) ........................... 27

*McCoy*, 492 F.3d at 557 (5th Cir.2007) ................................................................. 27

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..................................... 19

*McDonnell Douglas,* 411 U.S. at 802–05 .............................................................. 19

*Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir.2001) .................... 28

*Reed v. Neopost USA, Inc.,* 701 F.3d 434, 438 (5th Cir. Tex. 2012) ...................... 17

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 n. 2 (5th Cir.2002 ............. 19

*Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 .......................................... 20

*Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998) .............. 28

*Simmons v. Camden County Bd. Of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985). 28

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-508 (1993) ......................... 21

*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ............. 20

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under Section 1291, Title 28, United States Code as an appeal from a final judgment in the United States District Court for the Southern District of Texas. [1]    Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

I.    ISSUE ONE:  With regard to his discrimination claim, whether the District Court erred in granting National Oilwell Varco, L.P.'s Motion for Summary Judgment because Maurice Goudeau clearly demonstrated that National Oilwell Varco, L.P.'s reason for his termination was pretextual.

II.    ISSUE TWO:  With regard to his retaliation claim, whether the District Court erred in granting National Oilwell Varco L.P.'s Motion for Summary Judgment because Maurice Goudeau clearly demonstrated a causal connection existed between Maurice Goudeau's protected activity and his termination.

## STATEMENT OF THE CASE

A.    Proceedings Below.

On November 9, 2012, Plaintiff, Maurice R. Goudeau ("Goudeau"), filed his Original Complaint in the U.S. District Court for the Southern District of Texas,

---

[1] Citations to the record are as follows: "ROA..__."

Houston Division against Defendant National Oilwell Varco, L.P. ("NOV"). ROA 7.  Plaintiff filed his First Amended Complaint on January 14, 2013.  ROA 22.

NOV filed a Motion for Summary Judgment ("Motion"), on January 29, 2014.  ROA 108. Goudeau filed a Response to NOV's Motion on February 19, 2014.  ROA 294. NOV filed a Reply on February 27, 2014, and an Amended Reply on February 28, 2014.  ROA 504 and ROA 579.  The District Court granted NOV's Motion and Final Judgment was entered on March 28, 2014.  ROA 821.

Goudeau's Notice of Appeal was timely filed on April 17, 2014.  ROA 886. This case was assigned to the 5th Circuit Court of Appeals on April 21, 2014.

B.     Statement of the Facts

1.     The Parties

Appellant Maurice Goudeau began his career with ReedHycalog in 1993. Roa 430. He was originally hired as a mechanic and millwright, and successfully moved up the ranks at ReedHycalog where he eventually was promoted to the position of maintenance supervisor. Id.

NOV acquired ReedHycalog in April of 2008.   Following NOV's acquisition and until his termination, Goudeau worked as a maintenance supervisor at NOV's Conroe facility.  Appellant Maurice Goudeau was born in 1954. ROA 329. He was 57 years old when NOV terminated him in 2011.  Id.

NOV is an American multinational, multi-billion dollar corporation.  It is a worldwide provider of equipment and components used in oil and gas drilling and production operations, oilfield services, and supply chain integration services to the upstream oil and gas industry.

2.  Goudeau's Employment History with NOV

Throughout his career with ReedHycalog Goudeau was a dedicated and hard-working employee who performed his work without incident. ROA 377.  On performance evaluations, Goudeau was consistently ranked well.  ROA 335. Prior to NOV's acquisition of ReedHycalog, he never received a poor or negative performance review. Id.

While an NOV employee, Goudeau worked under two different supervisors.  His first supervisor was Tim Taylor.  ROA 457. While working under Taylor, Goudeau received no write-ups and had no performance issues.  ROA 458. Taylor reviewed Goudeau's performance in March of 2010 and gave Goudeau a satisfactory rating.  Id.  See also ROA 436-438.  In that review Goudeau was commended for his good work and for the quality of his work.  ROA 430.

In August or September, 2010, Mike Perkins ("Perkins") became Goudeau's supervisor.  ROA 430. Perkins was given multiple facilities to manage including the Conroe facility.  ROA 347. Shortly after Perkins took over the management of the Conroe facility, and after he became Goudeau's supervisor, he began to make

numerous snide, inappropriate and age-related comments to Goudeau, about Goudeau and about Goudeau's fellow older co-workers. Perkins also indicated that he planned on eliminating the older employees. See ROA 363; ROA 364; ROA 379; ROA 431.

During one conversation Perkins commented to Goudeau in a derogatory tone that "there sure are a lot of old farts around here," which Goudeau understood to mean that Perkins thought there were too many old people at the facility which he had just arrived at. ROA 363. During that same conversation Perkins began asking Goudeau about his job duties and his duties at the previous facility where he worked. ROA 363.

Perkins also asked about two other older employees who worked with Goudeau: Joe Jett and Bill Fisher. Id. These two men held management positions and reported to Perkins. Perkins asked Goudeau about their ages and how long they had been working for the Company. ROA 363-364. Perkins then told Goudeau that he wanted to "set fire to this place." ROA 364. Perkins also said, ". . . the first thing I'm going to do, is I'm going to fire Joe and I'm going to fire Bill." Id.

Goudeau, fully understanding that Perkins intended to terminate the two men because of their ages, was completely shocked and told Perkins that he objected to

his plan, telling him right then and there, "that is not right.  That is not the right

thing to do."  ROA 364.

Regardless of Goudeau's opposition, Perkins continued to make offensive

and derogatory comments based on age at the facility.  For instance, Perkins made

a number of insensitive and discriminatory comments in the facility smoking area

when older workers were present.  On a number of occasions he asked if the area

was "where the old people meet?"  ROA 364.

Perkins made inappropriate age-related remarks directly to Goudeau as well.

He once commented on Goudeau's clothing in an unkind and offensive way.

Goudeau was wearing a pair of jeans to work one weekend.  Perkins pointed to the

jeans Goudeau was wearing, and in front of Goudeau's co-worker's said that

Goudeau "does own a pair of jeans, he's not wearing them old man clothes that he

always wears."  ROA 379.

After Perkins's "old farts" comment, Goudeau complained to the Human

Rights department ("HR") and told them about Perkin's inappropriate comments

and his intent to terminate the older employees.  ROA 366.  HR informed Goudeau

that they were going to discuss the situation with Perkins.  Id. Following that

meeting with HR, Perkins "turned the heat up on [Goudeau]," and began treating

him differently because Goudeau opposed his plan and because he had

complained. Id.  Perkins thus began retaliating against Goudeau and trying to fire him along with Mr. Jett and Mr. Fisher, just as he had said he would.  ROA 373.

After Goudeau's complaint and after he voiced his opposition to Perkins, not only did Perkins stop talking and socializing with Goudeau, he also began removing Goudeau's responsibilities and authority to the point that Goudeau was unable to properly perform his job responsibilities. ROA 373.  Perkins ordered Goudeau's employees to report to him, rather than Goudeau.  In every instance when Goudeau would ask his employees to do something, they informed him that they now reported to Perkins, not Goudeau.  ROA 381.  Goudeau was also unable to direct his employees to complete certain projects because of his lack of authority.  Id. Further, Goudeau lost his authority to conduct performance reviews on his employees and his access to their personnel files was taken away.  Id. Perkins's retaliatory conduct made it difficult for Goudeau to complete his work. By January 2011, most of Goudeau's management authority had been taken away. ROA 373.

Perkins's retaliatory actions were so obvious that other employees noticed the change in Perkin's treatment of Goudeau as well.  Bill Fisher ("Fisher"), the facilities coordinator and Goudeau's co-worker, noticed a change in Perkins and Goudeau's relationship in the time period following Goudeau's complaints. Fisher noted that they were not friendly towards each other and did not hang out together

anymore. ROA 478. Fisher also noticed that Goudeau did not have any employees reporting to him anymore, where previously he had supervised several employees in his department. Id.

In addition to reporting Perkins' discriminatory comments and his illegal intent to HR, Goudeau also reported the comments to NOV's plant manager, Wayne Brewer. ROA 368. Goudeau complained and clearly recounted Perkins' age remarks and his plan to get rid of the older employees, including Goudeau. Id. Goudeau informed Brewer that Perkins was trying to terminate him. Brewer told Goudeau he would "handle it," and that he would speak with HR and with Richard Rodriguez, Perkins's immediate supervisor. Id. Subsequently, nothing was done.

In January of 2011, Perkins gave Goudeau the first written reprimand he had ever received in 18 years with the Company. ROA 356 and ROA 637. Goudeau was written up for insubordination, however, the type of warning, (e.g., first warning, second warning, etc.), was not indicated on the Employee Warning Notice. Goudeau responded to the write-up and made it clear that he had done what had been asked of him and had completed the task to the best of his ability. ROA 354. However, because Perkins had taken much of his authority away from him, Goudeau simply could not complete what was asked of him because he did not have the authority to do so anymore. Id.

Goudeau was understandably very upset about the write-up and immediately went to HR to report that Perkins was trying to fire him because of his age. Goudeau again filed a complaint with HR. ROA 644. He told HR that Perkins was using the write-up as retaliation for Goudeau's opposition to Perkins's plan to get rid of the older employees. Id. HR again informed Goudeau that they would "look into it". Id. Again, nothing was done.

On March 28, 2011, Goudeau received his first performance review from Perkins and got an overall rating of "2-Below standard performance." Id. This was the lowest performance review Goudeau had ever received. Id. It was clear that Perkins had relied on hearsay to support Goudeau's review, rather than on his own personal knowledge of Goudeau's work. Id. For instance, Perkins did not have personal knowledge of Goudeau's performance when he stated in the review that Goudeau's "productive work habits have not improved since last year's review. ROA 446. In fact, Perkins admitted that he made the comment without knowledge of Goudeau's prior performance. Id.

Unlike Perkins had done with his other employees, and which was customary at NOV and Reed Hycalog, Perkins did not meet with Goudeau to discuss the poor performance review. ROA 371 and ROA 374. Nor was Goudeau provided with any explanation as to what he was doing wrong, which had been done with his previous reviews. Id. Without any explanation, Goudeau was

13

unable to understand and/or correct the alleged problems or improve his performance.  ROA 432.  Goudeau essentially just had to live with the poor performance review which Perkins had given him.

After he received the poor performance review, once again Goudeau complained to HR.  Goudeau informed HR that the review was Perkins again retaliating against him because of his complaints to HR regarding Perkins's discriminatory comments and his expressed plan to get rid of the older employees. ROA 373. Goudeau told HR that Perkins was trying to fire him as part of Perkins's plan to get rid of the older employees.  Id. His complaints continued to fall on deaf ears.

Goudeau also told Perkins that he believed the performance review was discriminatory and retaliatory.  Perkins was also clearly aware that Goudeau had spoken with HR about these issues because Perkins told Goudeau that he should not have gone to HR because they allegedly "could have settled this in-house." Id.

Based on Perkins' retaliatory treatment, Goudeau then attempted to transfer to another department.  ROA 394. In fact, several other supervisors told Goudeau that they would be happy to have him transfer to their department.  Id. However, Perkins thwarted these attempts. Id. For instance, Jeff Woodruff had expressed an interest in having Goudeau work for him and told Goudeau that he would talk to

Perkins to see he could arrange a transfer. Woodruff later informed Goudeau that Perkins had flat out said "no," to the transfer. Id.

On August 11, 2011, Goudeau was unexpectedly called in to a meeting with Perkins and HR. Although he had only received one write up in the last 18 years, he was suddenly and inexplicably terminated. Perkins was the person who made the decision to terminate Goudeau's employment. ROA 393.

Astonishingly, at his termination meeting Goudeau was presented, for the first time, with <u>four</u> warning notices which he had never before seen. ROA 405; ROA 421; ROA 422; and ROA 424. Although the new warning notices were each dated July 15, 2014, <u>all</u> of the warning referred to infractions which took place at another time. Id.

The new warning notices included the following: a July 2, 2011 reprimand which was allegedly a "Second Warning., (ROA 405); a "Third Warning," regarding a July 12, 2011 infraction (ROA 421); a "Final Warning," regarding a July 14, 2011 infraction, (ROA 422); and <u>another</u> "Final Warning," regarding an August 4, 2011 infraction. (ROA 424).

Again, all of the notices were dated July 15, 2011. Essentially Goudeau was bombarded with four warnings, which allegedly occurred over a three month span of time prior to his termination, none of which he had ever seen or heard of, on the day of his termination. ROA 391 and ROA 433. In fact, none of the write-

ups even had his signature on them or any indication that he had been presented with them at any time.  ROA 434.

As with his first written reprimand, Goudeau testified that the tasks he was written up for in the new write ups were ultimately not his responsibility.  ROA 433.  Further, Goudeau testified that Perkins did not have personal knowledge of the circumstances surrounding the new write-ups but rather relied on hearsay to issue the new write-ups.  ROA 397. In fact, Perkins admitted that many of the circumstances surrounding Goudeau's write-ups occurred when Perkins was either on vacation or at the other facilities he managed.  ROA 173.

Upon granting NOV's Motion for Summary Judgment, the District Court held that Goudeau had clearly established a prima facie case for discrimination based on age.  ROA 831. The burden then shifted to NOV to articulate a legitimate, nondiscriminatory reason for Goudeau's termination.  Id. The District Court then erroneously held that NOV had satisfied its burden to produce evidence that demonstrated its reasons for firing Goudeau were valid.  Id. With respect to Goudeau's retaliation claim, the District Court held that no causal connection existed between Goudeau's protected activity and his termination.  Id.

## SUMMARY OF THE ARGUMENT

Summary judgment was unwarranted with respect to each of NOV's discrimination and retaliation defenses. The District Court ignored specific facts in the record showing the existence of genuine issues of material fact for trial.

The District Court agreed that Goudeau established a prima facie case of age discrimination by showing that he met all of the elements of his prima facie case. However, Goudeau also offered facts which taken as a whole create fact issues as to whether NOV's stated reasons for Goudeau's termination were pretextual. Additionally, Goudeau offered facts which taken as a whole create fact issues as to whether he demonstrated that a causal connection existed between his protected activity and his termination.

Therefore, NOV's Motion for Summary should have been denied and this case must be reversed and remanded to the District Court.

## ARGUMENT

### A. Standard of Review

An appellate court reviews a grant of summary judgment *de novo*, applying the same standard as the district court. *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 438 (5th Cir. Tex. 2012). A party is entitled to summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." *EEOC v. WC&M Enters.*, 496 F.3d 393, 397-98 (5th Cir. 2007); (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists when the evidence is such that, viewing the record as a whole, a reasonable jury could return a verdict for the non-moving party. See *Dediol v. Best Chevrolet*, 655 F.3d 435, 439 (5th Cir. 2011).

In reviewing a summary judgment motion, the court must "refrain from making credibility determinations or weighing the evidence," *WC&M*, 396 F.3d at 398, and must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See *id*.; see also *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-52 (1986) (noting that summary judgment is inappropriate if the evidence is such that disputed issues can be resolved in favor of either party).

**B.**    <u>**ISSUE ONE RESTATED**</u>**: Whether the District Court erred in granting NOV's Motion for Summary Judgment because Goudeau clearly demonstrated that NOV's reason for his termination was pretextual.**

1.    <u>Standard of Review</u>

Courts analyze both Title VII and ADEA claims based on circumstantial evidence under the burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 896 n. 2 (5th Cir.2002). *McDonnell Douglas* first requires a plaintiff to set out

a prima facie case of discrimination or retaliation. If the plaintiff meets that burden, the defendant must state a legitimate, nondiscriminatory reason for its allegedly discriminatory action, and, if it is able to do so, the plaintiff is left with the burden of showing that the defendant's stated reason was pretextual. See *McDonnell Douglas,* 411 U.S. at 802–05.

To establish a prima facie case of discrimination, a plaintiff must show (1) that he was a member of a protected group; (2) that he was qualified for the position at issue; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than similarly situated employees outside of his protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007).

"The issue at the pretext stage is whether the defendant's reason, even if incorrect, was the real reason for the plaintiff's termination." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 899 (5th Cir.2002 "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1091 (5th Cir.1995).

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "And in attempting to satisfy this burden, the plaintiff—once the employer

produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id*.; see also *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-508 (1993). "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, at 256. "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production," *St. Mary's Honor Center*, at 511, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case . . . and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual," *Burdine*, at 255.

2. <u>The District Court Correctly Finds Discrimination in Violation of the ADEA and TCHRA</u>

The District Court had no issue with Goudeau's *prima facie* case and appropriately found that Goudeau had established all elements necessary to show that he had been discriminated against based on his age. ROA 831. The burden then shifted to NOV to articulate a legitimate, nondiscriminatory reason for Goudeau's termination. Id.

3. <u>Goudeau Established Genuine Issues of Material Fact Regarding Pretext.</u>

A. <u>NOV Did Not Act in Good Faith in Terminating Goudeau.</u>

The District Court held that "as long as Perkins reasonably believed that Goudeau's performance was deficient and acted on it in good faith, the dispute as to when and whether Goudeau was issued write-ups does not evidence pretext." ROA 831.

However, there was clear evidence presented that Perkins did not act in good faith in terminating Goudeau and that the dispute as to when and whether Goudeau was issued write-ups was critical to this case because the four final write ups were highly questionable. Further, Goudeau presented evidence that he was terminated based on his previous complaints about Perkins' discriminatory conduct. Therefore, Goudeau clearly established that fact issues existed which established pretext.

Not only did Goudeau demonstrate that he had been discriminated based on his age; but this fact, coupled with the inappropriate comments Perkins made; the four dubious write ups and the discriminatory treatment which Goudeau endured after he complained; along with the fact that Goudeau was not presented with the write ups until the day he was terminated and the fact that the write ups were based on hearsay, in addition to Perkins own admission that he was not present when the events occurred clearly showed that NOV's proffered reasons were pretextual and that Perkins did not act in good faith in terminating Goudeau.

NOV forced Goudeau out of a job that he had held for eighteen years. Goudeau proved, and there was no dispute about the fact, that he did not have any issues with his job prior to Perkins becoming his supervisor. ROA 356 and ROA 637. Goudeau was by all accounts a good employee prior to Perkins becoming his supervisor and prior to Goudeau making complaints about Perkins' discriminatory objectives. Id.

By systematically eliminating Goudeau's authority and responsibilities, and by using spurious write-ups based on hearsay, written by a manager with clear discriminatory intentions to support Goudeau's termination, NOV carefully covered its tracks and falsely laid the groundwork for firing Goudeau. Because Perkins wanted to get rid of all of the "old farts," he used the write ups and the fact that Goudeau was not able to complete his tasks to support Goudeau's termination. The undisputable fact that Goudeau was presented with four write ups, which he had never before been presented with - and on the day of his termination (ROA 391 and ROA 433), is clear evidence which demonstrates the falsity of NOV's explanation for Goudeau's termination.

Further, NOV claimed that it terminated Goudeau's employment based on poor performance. However, because Goudeau was never presented with the write-ups prior to his termination, and was never able to rebut those write ups, it is

impossible for NOV to claim that the write ups were based on anything other than Perkins own testimony.

Perkins admitted that he was not there when many of the incidents happened, therefore the write ups were clearly based on hearsay.   ROA 173. Perkins also admitted that the situations surrounding the write-ups probably occurred while he was working at different facilities or on vacation which is also a reason why the later write-ups were signed by Perkins and HR all on the same date, July 15, 2011.  Id. Thus, Perkins could not have fully known if the write-ups were warranted or legitimate unless he spoke with Goudeau about them – which he did not until the day of Goudeau's termination. There is thus no doubt then that Perkins did not act in good faith.

Goudeau's testimony also supports the finding of genuine issues of material fact because he testified that he was ultimately not responsible for the actions for which he had been written up. ROA 433. Had Goudeau been given the chance to rebut the write-ups or had he at least been presented with them, when the incidents allegedly occurred, NOV may have a better argument. However, this was not the case. NOV instead bombarded Goudeau with the write ups the same day he was terminated and falsely indicated that the write ups were chronological when they very obviously are not.  ROA 405; ROA 421; ROA 422; and ROA 424. Every one of the four write ups were given to Goudeau on the day he was terminated. Id.

Goudeau was never presented with "second, third," or a "final warning," as the documents indicate and NOV presents no evidence that this was not true. Id.

B.     Goudeau Presented Sufficient Evidence to Show Pretext.

NOV's evidence to support its argument that Goudeau's termination was legitimate and nondiscriminatory consisted only of Perkin's testimony and a few inter-office emails which detailed nothing about Goudeau's alleged insubordination or terminable offenses.   Perkins testified that he was not there when many of the incidents happened.   ROA 173. More importantly, Goudeau's first write-up and poor performance review came only a few of months after Perkins's began to bombard Goudeau with inappropriate age related comments and after Goudeau complained about it to HR.   This evidence simply cannot be ignored.

Perkins meticulously set the foundation to terminate Goudeau using unmeritorious write-ups and by systematically removing Goudeau's responsibilities so that Goudeau could not have succeeded even if he had wanted to.   Goudeau presented strong evidence which demonstrated that there was a systematic plan to get rid of him because of his age.

For instance, in addition to the bogus write ups presented on the day he was fired, Perkins and Goudeau had a friendly relationship when Perkins first became Goudeau's supervisor.   ROA 431. The relationship changed once Goudeau told

Perkins that he was not doing the right thing in planning to get rid of older employees.  Id. After Goudeau complained to HR about that plan, Perkins immediately started retaliating against him. Id. This was not all in Goudeau's mind. Fisher testified that he noticed it too.  ROA 478. Perkins and Goudeau's relationship then morphed into a distinctly different animal.  Perkins began to treat Goudeau differently, he stopped chatting with him, he took away his responsibilities, he took away his authority, he kept him away from the personnel files, etc.  ROA 430-434.

Perkins was Goudeau's supervisor and a decision maker.  He issued all of Goudeau's write-ups and conducted Goudeau's performance review.  He had a hand in Plaintiff's termination; in fact, Perkins made the request to terminate Goudeau.  ROA 496.

Given the evidence presented which included questionable write ups, temporal proximity between Goudeau's complaints and his termination, Perkins's friendliness then sudden hostility towards Goudeau, and Goudeau's loss of authority and responsibility, there are very clearly genuine issues of material fact which were presented by Goudeau which evidenced that NOV's reason for Plaintiff's termination was pretextual.  A fact finder could thus easily find NOV's proffered reasons for Goudeau's termination to be pretextual and infer discrimination.  A jury deserves to weigh these factors.

C.   **ISSUE TWO RESTATED**:    Whether the District Court erred in granting NOV's Motion for Summary Judgment because Goudeau clearly demonstrated a causal connection existed between Goudeau's protected activity and his termination.

1.   Standard of Review

In order to establish a prima facie case for retaliation, a plaintiff must establish that he engaged in a protected activity, that he was subjected to an adverse employment action, and that there is a causal link between the two. *McCoy v. City of Shreveport,* 492 F.3d 551, 557 (5th Cir.2007). If a plaintiff makes a prima facie showing, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *McCoy*, 492 F.3d at 557 (5th Cir.2007). If the defendant meets its burden of production, the burden shifts back to the plaintiff to prove pretext. *Byers v. Dallas Morning News, Inc*., 209 F.3d 419, 427 (5th Cir.2000).

A "causal link" is established when the evidence demonstrates that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity."  *Medina v. Ramsey Steel Co., Inc*., 238 F.3d 674, 684 (5th Cir.2001)(citing to *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998). Further, the Fifth Circuit has followed the Eleventh Circuit in holding that the causal link element is satisfied when the plaintiff shows that the employment decision and his protected activity are "not wholly unrelated." Id.,

(citing *Simmons v. Camden County Bd. Of Educ.*, 757 F.2d 1187, 1189 (11th Cir.1985)).

2.    Argument and Analysis

There is no dispute that Goudeau was subjected to an adverse employment action.  The District Court held that Goudeau's complaints to HR that Perkins was retaliating against him and complaining of age discrimination were protected activities.   ROA 832. The Court also found that Goudeau's complaints clearly asserted rights protected by the ADEA and TCHRA and called for their protection. Id. Therefore, Goudeau met these elements of a *prima facie* case for retaliation. Id.

However, the Court held that no causal link existed between the protected activity and Goudeau's termination for two reasons: 1) because seven months had elapsed between Perkins being informed of Goudeau's complaint and the adverse employment action; and 2) because the only evidence that Perkins knew of Goudeau's complaint was Goudeau's own testimony. ROA 833.

A.     Goudeau's Termination and the Protected Activity Were Not Wholly Unrelated.

The Court's short-sighted view of Goudeau's termination unfortunately failed to consider a number of pertinent issues which Goudeau presented. Namely, that Goudeau's termination was based on several write ups concerning incidents which occurred in close temporal proximity to Goudeau's complaints. Therefore, it is impossible to see Goudeau's final termination singularly and to see only a seven

month period between one complaint and his termination as the only basis for establishing a causal connection.

In order to fully understand Goudeau's termination one must view it as dynamic and as the end of a series of events that ultimately led up to his termination. Seeing his termination as a one day event is simply myopic. Goudeau's termination was in actuality a culmination of events which occurred immediately after his complaints to Perkins and to HR about Perkins' inappropriate comments and his plan to rid the facility of older workers.

The timeline leading up to Goudeau's termination was made very clear. Perkins became Goudeau's supervisor around August or September 2010. ROA 433. Goudeau received his first write-up in January of 2011. ROA 356 and ROA 637. Somewhere between that time, Perkins made age comments and expressed his plan to get rid of the older employees, which Goudeau opposed. ROA 431-432. It was during this time period that Plaintiff's responsibilities were taken away from him – before January of 2011. ROA 382. Goudeau informed Fisher of Perkins's plan to get rid of him shortly after Perkins became his supervisor. ROA 459. Goudeau made numerous complaints to HR. Goudeau's first complaint to HR was after Perkins's "old farts" comment. ROA 364. He complained again to HR after his first write-up. ROA 373. Perkins was aware of Goudeau's complaint about the write-up. ROA 356. In March, 2011 Goudeau received his performance review;

again, Goudeau complained to HR. ROA 370. Perkins was aware of Goudeau's complaint about his performance review. ROA 373-374. In each complaint to HR Goudeau stated that Perkins was trying to terminate him as part of Perkins's plan to terminate the older employees. Between March and August, Goudeau received several additional write-ups (which he was not notified of until his termination) and was terminated in August of 2011. ROA 433.

Therefore a causal connection undoubtedly did exist between Goudeau's complaints and his termination because Goudeau was terminated following this series of events and after numerous complaints to HR. At the very least, there can be no doubt but that the timeline clearly indicates that a factual issue exists regarding the causal connection between Goudeau's termination and his complaints.

B. <u>Goudeau Presented Sufficient Evidence to Support his Retaliation Claim</u>

The District Court held that Goudeau's retaliation claim was unsupported because the only evidence he offered to support his claim was his own testimony. The Court believed that this was not enough to support the argument that Goudeau's complaints and the ensuing retaliation were not wholly unrelated. ROA 833.

While it is true that Goudeau supported his allegations based on his own testimony, it is also true that the only evidence NOV offered to rebut that

testimony was Perkins own testimony. NOV submitted a few emails which show absolutely nothing except the inner workings of the facility.  It then submitted one performance review and the questionable write ups.  There was no evidence to support the legitimacy of the write ups, no witnesses were presented to validate the write ups, nor were any witnesses presented to support Goudeau's performance issues.

Given Goudeau's testimony vehemently repudiating the write ups, and the fact that he did not receive four of the write ups until the day he was terminated, clearly a genuine issue of material fact exists as to the legitimacy of Goudeau's termination.  Because Goudeau testified that he was written up and eventually terminated following his complaints to Perkins, HR and to Mr. Brewer, a causal connection clearly existed between his protected activity and his termination.

Perkins was fully aware of Goudeau's HR complaints. He was the decision maker and played a significant role in Goudeau's termination – he initiated all of the write-ups and requested Goudeau's termination.

Goudeau thus presented clear evidence which showed a causal connection between his protected activity and his termination.  His complaints and his subsequent termination are not wholly unrelated.  Goudeau met his burden to provide evidence as to his prima facie case of retaliation.  At the very least a

genuine issue of material fact exists which must allow the case to be submitted to a jury.

## CONCLUSION

For the foregoing reasons, the District Court's decision should be reversed and the case remanded to the Court for further proceedings consistent with this ruling.

Respectfully submitted,



_____

Terrence R. Robinson
Texas SBN: 17112900
Fed. I.D. No.: 14218
Michelle Mishoe Miller
Texas Bar No. 24044991
SD No. 997007
5433 Westheimer Rd. Suite 825
Houston, Texas 77056
Tel: (713) 742-0900
Fax: (713) 742-0951

*Counsel for Defendant-Appellant Maurice Goudeau*

# <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because the brief contains 6,409 words, including the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 Point Font.

Dated:      Houston, Texas

            July 18, 2014



_____
Terrence R. Robinson
Texas SBN: 17112900
Fed. I.D. No.: 14218
5433 Westheimer Rd. Suite 825
Houston, Texas 77056
Tel: (713) 742-0900
Fax: (713) 742-0951

*Counsel for Plaintiff-Appellant Maurice Goudeau*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of *Appellant's Brief* has been forwarded to counsel of record for NATIONAL OILWELL VARCO, L.P., electronically and served via the Court's electronic filing system on this 18TH day of July, 2014:

Christopher E. Moore, Esq.
TX State Bar No. 24052778
SDTX Admission No.  713063
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Shell Square
701 Poydras St., Suite 3500
New Orleans, LA 70139
Telephone:  (504) 648-3840
Facsimile:  (504) 648-3859
Email: christopher.moore@ogletreedeakins.com
Attorney for Defendant National Oilwell Varco, L.P.

kennard
blankenship
robinson P.C.

_____
Terrence R. Robinson